Baker *v.* Cotter.

———————◆———————

Jeremiah Baker & *al. versus* Cyrus Cotter & *als.*

In a suit between other parties, parol evidence is admissible and sufficient to prove that a person was president of an insurance company, and that he had authority to indorse notes for the company.

If the president of an insurance company is empowered and required, by the by-laws, to adjust and pay all losses, authority to transfer and dispose of the funds of the company for that purpose, including negotiable paper owned by them, may be presumed; for the imposition of the duty implies the grant of authority necessary to its performance.

This was an action upon a promissory note, of which the following is a copy:—

"$1250. Boston, June 1, 1855.

"Twelve months after date, we promise to pay the Tremont Mutual Insurance Company, or order, for value received, twelve hundred and fifty dollars. Cotter, Bond & Co."

This was a subscription note, given to the company to be used by them as a part of their capital. The defendants, in consideration of it, became entitled to participate in the profits of the company, and to have policies underwritten on account of it.

November 16, 1855, the company being indebted to the

plaintiffs for a loss, against which they had insured, transferred and delivered to them this note. It was indorsed "John G. Nazro, President."

The case shows that, at the time of this transfer, the company were indebted to the defendants, but this fact was not known to the plaintiffs.

The execution of the note was admitted, but the authority of Nazro, as president of the company, to transfer it, was denied. The other testimony in the case, so far as it is material, is stated in the argument of the counsel for defendants, and in the opinion of the Court. The case was argued by

*B. Freeman*, for the plaintiffs, and by

*Shepley & Dana*, for the defendants.

The following is the substance of the argument for defendants : —

The first question that arises is whether the note was so indorsed to plaintiffs as to pass the title to them, and enable them to maintain a suit upon it in their own names.

To prove that the Tremont Insurance Company have transferred the note, the plaintiffs have taken the deposition of John G. Nazro, who states that, on the 16th day of November, 1855, he transferred the note to the plaintiffs, "by authority given to the president by the by-laws and by the uniform usage of the company."

The indorsement of a note is just as solemn an act as the making of a note, and subjects the party bound by it to liabilities of the same nature. It is not enough for any officer of a corporation to say that his act was by virtue of a usage of the company, without showing what that usage was, so that the Court may judge whether, under the charter and the circumstances, the pretended usage gave the authority pretended.

Where a party sets up that his act was authorized by a usage, it is the duty of the Court to examine the nature and extent of that usage. But here is no opportunity or means offered. It is not said how long, uniform or well known, this

usage was, or whether the plaintiffs or defendants or corporators knew of it.

A party cannot show himself authorized to sign or indorse notes, the property of another, by simply saying it was his usage to do so. The assent of the parties to be affected thereby must be shown to give that usage any force.

Especially is that so in the case where a corporation is attempted to be bound by usage. The authority of officers of corporations appears by the charter, by-laws or votes of that corporation; and no usage can control these, or give authority where they are silent, unless it has been well established, long used and acquiesced in by the company.

No such usage or acquiescence is attempted to be shown; and, where an officer's duties and authority are shown by written evidence, we submit that this, his mere word that his act was authorized by usage, is not enough. Let him state the nature and extent of that usage, that the Court may judge whether or not, in opposition to, or in the silence of the organic law of the company, the act was authorized. On this point, see *Sch. Reeside,* 2 Sumner, 567, and cases cited in 2 Greenl. Ev. § 292, n. 2; 2 Greenl. Ev. § 252.

We contend, therefore, that no power is shown by usage, because no usage is in fact shown; and that, if Nazro had any power to indorse this note, it must appear by the by-laws to which he refers.

But the Court will find, upon examination of the by-laws annexed to his deposition, that no authority is given Nazro to indorse notes.

In confining his authority to the power conferred by usage and the by-laws, he shows that he could lay claim to no other pretence of authority; and, if *these* do not confer it, the indorsement was not the act of the company, and the plaintiffs cannot maintain this action.

The Court may notice that, in the copy of the by-laws annexed to the deposition of Nazro, there are two sections marked, apparently by the witness, as those under which he

claims to have acted, viz.: § 6, and § 10. The sixth section clearly gives no authority. The tenth section is in these words: "All notes and obligations given in the name of the company shall be signed by the president, *and countersigned by the secretary*, and bear the written approval of two directors. *No note or obligation shall be given, unless authorized by a vote of the board of directors.*"

The indorsement of a note creates a new liability; it is then in the hands of an indorsee, the same as the note of the company, who agree to pay if the maker does not; it is an *obligation* of the company, and should have been authorized by a vote of the directors.

By signing the note, the defendants promised to pay the Tremont Mutual Insurance Company, twelve hundred and fifty dollars. There is no admission by defendants that Nazro was president; there is no promise to pay to his order; there is no proof that he was president; nor that he was accustomed to bind the company by his acts.

The company keeps a book of records, as is shown, and, if Nazro was president, his election must appear there, and be shown by the record, and cannot be proved otherwise.

The cases do not go farther than to say that the authority of an agent may be proved by parol. But that does not affect the case at bar. The witness undertakes to prove that he was elected president of the insurance company. If he were, this would appear of record, and the record should have been resorted to by plaintiffs, who have no right to the note unless the witness was president; and, when a fact is to be established by record alone, the record cannot be dispensed with.

The opinion of the Court was drawn up by

GOODENOW, J. — The case finds that the defendants admitted the execution of the note declared on, but did not admit the indorsement to the plaintiffs.

They admit, then, the existence of the " Tremont Mutual Insurance Company," as a corporation properly organized to

do business, on June 1, 1855, at the date of the note; and the note was for value received, by its terms. It was for the sum of $1250, payable in twelve months after date, to the company, or order. It was indorsed as follows: "John G. Nazro, Pres." "Pay B. F. Shaw, Esq., cash. or order."

In *Milledge* v. *Boston Manuf'g Company*, 5 Cush. 179, it was held that, "the powers of agents, as well as any other fact necessary to charge a corporation, may be proved by corporate acts, and by acts of persons professing to be their agents and servants, and the tacit acquiescence of the corporation."

"And, inasmuch as the powers of agents may be proved by extraneous evidence, the extent and limitation of their powers may be proved in the same manner."

Nazro deposes that he derived his authority to indorse from the by-laws, and the uniform usage of the company. Corporations can act, usually, only by agents. The means must be proportioned to the end. The agents must necessarily have power to accomplish the business for which they are appointed. The president had power, by the sixth section of the by-laws, "to adjust and pay all losses." For this purpose, he must use the means which the company have placed in his hands. If these means are negotiable notes, in order to be used and transferred, they must be indorsed. If no provision has been made for their indorsement by a treasurer, or other agent of the company specially authorized, it seems reasonable to infer that the company must have understood that it would be the duty of the president, *ex officio*, to indorse and transfer them, from time to time, as they should be needed, in the performance of the legitimate business of the company. From the testimony of the president, we are authorized to conclude that such had been his practice, and that it had been acquiesced in by the company.

There is an essential difference, in our opinion, between the power to contract a debt, and the power to use the means of the company to discharge a debt already existing. In the one case, they are free to act or not to act, as they please. In the

other, the obligation is upon them, and the wide field of unlimited discretion and judgment is taken away. The testimony of Nazro was competent to prove his agency *de facto.*

We are of opinion that the depositions of the plaintiffs were properly admitted in evidence.

A default must be entered, and judgment for the plaintiffs for the amount of the note, and interest from the time it became due, and for costs.

TENNEY, C. J., HATHAWAY, CUTTING, MAY, and DAVIS, J. J., concurred.